IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

KEVIN PATTERSON,

        Defendant.
_____/

CIV. NO. S-05-0285 EJG
CR. NO. S-99-0551 EJG

<u>ORDER DENYING MOTION TO
VACATE, SET ASIDE OR CORRECT
SENTENCE</u>

    Defendant, a federal prisoner appearing through counsel, has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.  After reviewing the record and the documents filed in connection with the motion, the court has determined that this matter may be decided without an evidentiary hearing because the files and the records of the case affirmatively show the factual and legal invalidity of defendant's arguments.  <u>Shah v. United States</u>, 878 F.2d 1156, 1158-59 (9th Cir. 1989).[1]  For the reasons that follow, the motion is DENIED.

---

[1] Defendant spends a large portion of his reply brief arguing the need for an evidentiary hearing to resolve factual disputes raised by "competing affidavits."  The only affidavits offered in connection with this motion are on behalf of the government.  Defendant has not offered any affidavits, from himself or others, in support of his § 2255 motion.

1

BACKGROUND

Defendant was convicted, following a jury trial, of one count of conspiracy to use a weapon of mass destruction, one count of conspiracy to use a destructive device, one count of possession of a destructive device and one count of conspiracy to violate federal firearms laws.[2]  He was sentenced September 9, 2002 to 293 months imprisonment and a five year term of supervised release.  His sentence and convictions were affirmed on appeal.  United States v. Kiles & Patterson, 81 Fed. Appx. 244 (9th Cir. 2003).

Defendant filed the instant motion on February 14, 2005 raising thirteen claims.  The court issued an order establishing a briefing schedule.  The government timely filed its response April 22, 2005.  Defendant, though notified by the court on several occasions, failed to file a reply.  Meanwhile, the court discovered that the government's opposition responded to only four of defendant's 13 claims.  Therefore, an order was issued directing the government to file a supplemental brief.  In response to this brief, defendant filed a reply in September of 2006.  A status conference was scheduled, and subsequently re-scheduled, to address two issues raised by the parties' briefs. First, in its opposition, the government referred to defendant's 103 page memorandum of points and authorities in support of his

---

[2] The conviction followed a second trial.  An initial trial resulted in a hung jury on the conspiracy counts and the subsequent declaration of a mistrial by the court.

2

motion, a document the court had not received. Second, defendant's reply argued, erroneously, that defendant had been denied his appellate rights.[3] As a result of the status conference, the court was provided with a copy of the defendant's 103 page memorandum of points and authorities with accompanying exhibits, and the matter was ordered submitted on December 8, 2006. The court is now prepared to rule and will address the claims in the order in which they were presented in the opening motion.[4]

## DISCUSSION

Defendant's **first claim** alleges his conviction was the result of an unconstitutional search and seizure, in violation of the fourth amendment. Specifically, defendant attacks the application for authorization of wiretap surveillance, and, in addition, contends that search warrants emanating from the wiretap and evidence obtained therefrom, are fruits of the poisonous tree.

This claim, as well as a majority of those raised in this motion, are procedurally barred. In other words, defendant is

---

[3] The reply brief lambasts trial counsel, Mr. Samuel, for failing to file a notice of appeal and divesting defendant of his appeal rights. Defendant argues that the remainder of the § 2255 motion should be held in abeyance while defendant's appellate rights are reinstated and pursued. Obviously, defendant is mistaken. Not only was an appeal filed, but it was litigated and resolved against defendant. Moreover, the appeal and the fact that it was denied are facts mentioned by current counsel, Mr. Sterwerf, in the initial § 2255 motion!

[4] Defendant's brief filed in support of and many months after the initial motion also addresses thirteen claims. However, they are not in the same order as they were in the initial motion and, in many instances, they are not the same claims.

3

precluded from asserting claims on collateral review which he failed to raise on direct appeal, absent an explanation for his failure to do so.  "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas *only* if the defendant can first demonstrate either "cause" and actual "prejudice" [citations omitted] or that he is "actually innocent. . . ."  Bousley v. United States, 118 S.Ct. 1604, 1611 (1998) (emphasis added).  Defendant has offered no evidence of cause and prejudice for failure to raise this claim on appeal, nor has he demonstrated actual innocence of the crimes charged.[5]

In addition to the procedural defect, the first claim also fails on the merits.  A motion to suppress the results of the wiretap was made and denied by the district court after a hearing on January 22, 2001.  That motion challenged the wiretap application and affidavit on the grounds that they did not contain the requisite specificity and necessity required by 18 U.S.C. § 2518, the federal wiretap statute.  In the instant motion defendant raises the same arguments, couched in different terms.

For example, defendant argues that 'absence of a criminal history', an 'inability to maintain surveillance', and a 'lack of useful information in defendant's garbage', among other things,

---

[5] The *second, fifth, sixth, seventh, ninth, eleventh,* and *thirteenth* claims are procedurally barred for the same reasons.

4

form the basis for the government's probable cause for issuance of the wiretap application.  Then he criticizes the government for reciting these items in its application, "Not one of the asserted basis [sic] for the government's suspicions enumerated in the declaration for the wiretap arose even close to a level of probable cause to justify a wiretap on [defendant's] phone." Defendant's Opening Brief, 46:20-23 (docket entry 298). However, as the court noted in its denial of the motion to suppress, 18 U.S.C. § 2518(1)( c) *requires* the government to state, and § 2518(3)( c) *requires* the court to find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried. . . ."  18 U.S.C. § 2518(3)( c).  Recitation of these attempted investigative techniques in the wiretap application was a pre-requisite for the issuance of the wiretap, not a verbatim listing of probable cause.  See Transcript of ruling on motion (docket entry 74).  The first claim is DENIED.

The **second claim** alleges the government failed to turn over exculpatory evidence in the form of a complete copy of a surveillance tape, as well as 17,000 pages of written discovery. Defendant alleges the withheld evidence contains a conversation in which he withdraws from the conspiracy, disavowing any interest in blowing up the propane tanks.  This claim, like the first one and for the same reasons, is procedurally barred.  No evidence of "cause and prejudice" or "actual innocence" has been

5

presented.  Moreover, no facts have been offered to support the claim itself, which fails on the merits for lack of evidentiary support.[6]

The **third, fourth** and **eighth claims** allege ineffective assistance of counsel and will be analyzed together. To prevail on a claim of ineffective assistance of counsel, defendant must demonstrate that counsel's performance was deficient, and that but for the deficiencies, the outcome would have been different. See generally, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984).  Defense counsel is presumed to have acted reasonably and to have provided constitutionally adequate assistance.  Id. 104 S.Ct. at 2065.  Moreover, second guessing of counsel's tactical decisions after conviction cannot form a basis for a claim of ineffective assistance.  See Strickland, 104 S.Ct. 2065 (counsel's performance must be evaluated without the "distorting effects of hindsight").

In the first part of the **third claim** defendant suggests that witnesses whose names he has recently discovered would have discredited the testimony of co-defendant Donald Rudolph. However, defendant supplies neither the names of the persons nor the substance of their anticipated testimony.  These conclusory and unsupported statements are insufficient to show that

---

[6] The exhibits defendant proffers in support of this claim consist of a copy of the wiretap application affidavit and a letter from the FBI in response to a 2003 freedom of information request.  Neither document provide any support for defendant's assertions.

6

counsel's performance was deficient.  Moreover, even were the court to assume the existence of the evidence, defendant has not shown how discrediting Donald Rudolph would have avoided a conviction.  Rudolph was not the only witness that testified about defendant's involvement in the conspiracy.  As the Ninth Circuit noted in its affirmance, "*numerous* witnesses testified to either overhearing or participating in conversations in which Patterson and Kiles discussed a plan to blow up the tanks. . . ." United States v. Kiles, 81 Fed. Appx. 241 (9th Cir. 2003) (emphasis added).

In the second part of the **third claim** defendant alleges that counsel was ineffective for failing to have defendant psychiatrically evaluated.[7]  The basis for this claim is twofold.  First, defendant argues that he was recently diagnosed in prison with bipolar disorder.  Second, defendant argues that he has suffered from a mental condition since the time of trial.  In support defendant cites a newspaper article written at the time defendant was to be sentenced, in which his counsel sought a delay for a psychiatric exam because defendant had "self-diagnosed himself as possibly having mental problems." Defendant's Exhibit 5, p. 22.

---

[7] The government does not respond to this portion of the third claim, suggesting that it was not raised until the reply brief.  While it was not fleshed out until the reply brief, a careful reading of the original § 2255 motion shows that it was embedded within the last two sentences of the third claim.  Motion to Vacate, Set Aside or Correct Sentence, p. 5 (last two lines).

7

Neither defendant's unsupported statement of a recent diagnosis of bipolar disorder, nor his self-diagnosis many years before are evidence of a disease or defect leaving defendant without the capacity to have formed the intent to join a criminal conspiracy. The bipolar diagnosis is not supported by a doctor's report, nor by any evidence suggesting that such a diagnosis nullifies criminal intent. Moreover, defendant's "self-diagnosis as possibly having mental problems" was not long lasting, since the request for psychiatric examination made at the time of sentencing was withdrawn by defendant some two weeks later. Docket Entry 216, September 9, 2002.

The Evans and Smith cases cited by defendant are inapposite. In both instances counsel was found deficient for failing to present evidence of mitigation during the sentencing phase of death penalty cases. In both cases counsel possessed actual knowledge of relevant evidence. In Evans the record is replete with documents showing defendant had a history of mental problems, including a note from a trial judge that defendant was in need of psychiatric treatment, incarcerations at two mental facilities for inmates, and a notation on his rap sheet showing a suicide attempt. In the face of this evidence, the court found that counsel's failure to investigate defendant's mental condition as a possible mitigating factor constituted deficient performance. Evans v. Lewis, 855 F.2d 631, 636-37 (9th Cir. 1988). In Smith, counsel offered no evidence in mitigation

8

despite knowledge of his client's sociopathic personality and drug history.  Smith v. Stewart, 140 F.3d 1263 (9th Cir. 1998). Unlike Evans and Smith, counsel in the instant case had no *actual knowledge* of mental impairment, nor does defendant offer any evidence to the contrary.  Having found no deficient performance, the third claim is DENIED.

The **fourth claim** alleges ineffective assistance based on counsel's failure to raise the affirmative defenses of entrapment and withdrawal.  No evidence of either defense has been presented by defendant nor does the court's independent review of the trial record show the possibility of either defense.  As the government notes, it is not ineffective to refrain from presenting a defense for which there is no factual support.  This claim is DENIED.

The **eighth claim** argues counsel was ineffective by failing to inform defendant of a plea bargain.  Specifically, defendant states that after conviction and sentence, while incarcerated, he reviewed discovery documents and became aware of a plea offer made by the government for 36 months.  Had he known the facts of the case, he says, he would not have rejected the offer and gone to trial, but would have pled guilty.  Defendant has not produced any evidence to support this claim.

In response, the government offers the declaration of trial counsel, Mr. Samuel.  Declaration of Dwight Samuel, attached as Exhibit A to supplemental opposition to defendant's § 2255 motion, filed August 28, 2006, docket entry 283.  Mr. Samuel

9

states he does not recall an offer of 36 months; however, an offer for 10 years (120 months) was made by the government in a letter.  Mr. Samuel states that defendant did not want to hear offers or engage in conversations about them, rather he maintained his innocence and was adamant that the case proceed to trial.  "Nevertheless, I did present the government's offer to Kevin.  We discussed it fully, I pointed out the pros and cons of the offer, and he rejected it."  Samuel Declaration, ¶ 5:17-19.

Defendant has neither addressed nor countered Mr. Samuel's declaration.  Accordingly, this claim fails for lack of evidentiary support and is DENIED.

The ***fifth claim*** alleges a lack of evidence of a conspiracy.  This claim has already been considered and rejected by the Ninth Circuit which specifically rejected a claim of insufficiency of the evidence.

> Patterson contends there was insufficient evidence to support the conspiracy convictions. . . . Drawing all inferences in favor of the prosecution, including those pertaining to the credibility of witnesses [citation omitted] there was sufficient evidence to sustain the convictions.  Numerous witnesses testified to either overhearing or participating in conversations in which Patterson and Kiles discussed a plan to blow up the tanks, including discussions about the type of charge needed to rupture the tank and the need for a second device to ignite the leaking gas.  Moreover, bomb-making materials were found at Patterson's home, including detonators and what he himself described as 'Timothy McVeigh quality' ammonium nitrate.  The jury could have reasonably inferred that these materials were intended to be used in the plot.

United States v. Kiles, 81 Fed. Appx. 244, 245 (9th Cir. 2003).  Defendant may not relitigate issues decided adversely to him

10

absent changed circumstances of law or fact, neither of which are present here.  See <u>United States v. Redd</u>, 759 F.2d 699, 701 (9th Cir. 1985) (federal habeas may not be used to relitigate issues already decided on direct appeal).  This claim is DENIED.

In the ***sixth claim***, defendant contends he was entrapped. Again, as with a majority of his claims, defendant has procedurally defaulted and is therefore precluded from raising this claim on collateral attack absent circumstances which are not present here, namely cause and prejudice, or actual innocence.  Moreover, even if the court were to reach the merits, the claim would be denied as contrary to the evidence at trial.

Defendant argues he was not predisposed to commit the crimes of which he was convicted and that he "steadfastly refused the government's solicitations" to participate in the conspiracy. Despite defendant's unsupported protestations to the contrary, this is not a case in which the government "originate[d] a criminal design, implant[ed] in an innocent person's mind the disposition to commit a criminal act, and then induc[ed] commission of the crime so the Government could prosecute." <u>Jacobson v. United States</u>, 503 U.S. 540, 548 (1993).  Whatever defendant's belief now, it does not correspond with the evidence adduced at trial.  It was the testimony of both Donald Rudolph and Dana Norman that the idea for blowing up the tanks originated with defendant in the fall of 1996 and that he continued to raise

11

and discuss the matter with other members of the San Joaquin County Militia.  This Claim is DENIED.

Defendant's **seventh claim** alleges the defense of impossibility on the grounds that the conspiracy had as a member a government agent who had no intent to carry it out.  Again, this claim is procedurally defaulted, defendant having failed to raise it on direct review.  Moreover, the claim is also legally and factually without merit.  While it is true that one of the co-conspirators was working at the behest of the government, the law of conspiracy does not prevent the government from using informants and undercover law enforcement officers unless that person is the only other conspirator.  "An individual must conspire with at least one bona fide co-conspirator to meet the formal requirements of a conspiracy."  United States v. Schmidt, 947 F.2d 362, 267 (9th Cir. 1991).  Here, the conspiracy changed in size several times during its three year life.  From the outset, however, there were always at least two conspirators, the defendant and his co-defendant Kiles, exclusive of the informant. Further, the government informant did not begin to act in that capacity until two years after the formation of the conspiracy.  This claim is DENIED.

The **ninth claim** alleges prosecutorial misconduct in the form of "purchased" testimony.  Specifically, defendant argues that the government bought the testimony of co-defendant Donald Rudolph in exchange for a lenient sentence.  This claim, like the

12

others, has been procedurally defaulted.  Moreover, it fails on the merits.  Without citing any examples and without offering any contradictory testimony, defendant baldly asserts that defendant Donald Rudolph committed perjury and that it was done at the request and with the permission of the United States government.  This claim, like all of its predecessors, fails for lack of evidentiary support and is DENIED.

The **tenth claim** is a variation of the sixth and ninth claims and alleges defendant's conviction was the result of a co-conspirator's uncorroborated testimony, in violation of due process.  Like the sixth and ninth claims, the tenth is both procedurally barred and bereft of any evidentiary support.  Accordingly, it is DENIED.

In the **eleventh claim** defendant maintains that the crimes of which he was convicted require certification by the Attorney General prior to prosecution.  He has provided no citation of authority in support of this claim, nor has the court in its review of the statutes discovered any certification requirement.  This claim is DENIED.

The **twelfth claim** alleges defendant's sentence violates retroactivity rules and guidelines. Specifically, defendant argues that his sentence was enhanced by factual findings made by the court using a preponderance standard instead of by the jury using a reasonable doubt standard.  While the legal landscape of guideline sentencing has evolved during the period following

13

defendant's conviction and sentence, he has not demonstrated that he is an intended beneficiary of any of the changes.

Despite the lengths to which he goes in fourteen pages to argue for the retroactive application of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), his arguments have been considered and rejected by the Ninth Circuit. In 2002 the Ninth Circuit stated that <u>Apprendi</u> does not apply retroactively on collateral review. <u>See</u> <u>United States v. Sanchez-Cervantes</u>, 282 F.3d 664 (9th Cir. 2002). That ruling has not been superseded by the Supreme Court. <u>See</u> <u>Cooper-Smith v. Palmateer</u>, 397 F.3d 1236, 1245-46 (9th Cir. 2005). Accordingly, this claim is DENIED.

The ***thirteenth claim*** alleges that the government tainted the testimony of witnesses by showing them photographs of defendant prior to their testimony. Defendant asserts that "[t]he officer showed the witnesses pictures of [defendant], after they stated that they did not remember the parties they were being questioned about." Defendant's Opening Brief, 61:5-8. Defendant argues that this method of individual identification was "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny defendant due process. <u>See</u> <u>Stovall v. Denno</u>, 388 U.S. 293 (1967), <u>overruled on other grounds</u>, <u>Griffith v. Kentucky</u>, 479 U.S. 314 (1987).

This claim, like the others, is both procedurally barred and fails for lack of evidentiary support. Not only does defendant fail to provide <u>any</u> facts in support of this claim, the sole name

14

he does includes as someone whose testimony was tainted, Officer [sic] Farris, was not called as a witness at trial, nor is there any mention of him being shown a photograph of defendant.[8] This claim is DENIED.

## CONCLUSION

Based on the foregoing, defendant's motion to vacate, set aside or correct sentence is DENIED. The Clerk of Court is directed to close companion civil case CV. S-05-0285 EJG. IT IS SO ORDERED.

Dated: September 13, 2007

/s/ Edward J. Garcia
EDWARD J. GARCIA, JUDGE
UNITED STATES DISTRICT COURT

---

[8] Sergeant Stanley Farris is mentioned in a paragraph of the Affidavit of Special Agent Michael LeMieux in support of the application for wiretap. The paragraph contains no information that Farris was shown photographs of defendant as a means of identification. Nor has defendant presented any such information.

15